First case, 21-1190, Van Sant & Co. v. Town of Calhan. Counsel? Morning, Your Honors. My name is Tom McMahon. I represent the plaintiff appellant, Van Sant, here. Based on our separate expertise, I'll be splitting time with my colleague, Ben Wick. I will deal with the Section 1983 issues. We'd like to reserve two minutes for rebuttal. This is the RV Park case. It arises out of events in the 2015-2019 time period in the tiny rural town of Calhan out on the eastern Colorado plains. It involves a trailer park that was owned by Van Sant that in mid-2015, for economic reasons, began renting empty spaces long-term to recreational vehicles. That put it in competition with the two established RV parks in Calhan. The larger one with 71% of the long-term rental spaces is Cadillac Jacks. It's owned and operated by Annette and Calvin Chaucey. The smaller one with 21% of the long-term rental spaces is Jolly's. Significantly, during the relevant time period, there were three Chaucey family members on the town government of Calhan. Two grandsons, Cameron and Tyler, and a son, Brent. Because of the family ties to Cadillac Jacks, they had personal and private interests in the RV Park area. Counsel, but when they acted in the way that you're contending was unauthorized, were they authorized to act? That is the position. I think, we think, that it was within their job description to act, but they were specifically prohibited by statute from voting or influencing others regarding the RV Park ordinances because of their personal and private interests relating to Cadillac Jacks. So you're arguing a conflict of interest as regards ethical concerns? Yeah, well, it was a statutory violation, Your Honor. What was the evidence of that before the district court? I'm aware of the statute, the Colorado statute. There are two trusts, one the video trust and one the family trust. The video trust basically owns the assets of Cadillac Jacks and these three individuals, Cameron and Tyler and Brent, were all beneficiaries of that trust and of the other trust. The other trust related to the property on which Cadillac Jacks sits. So that was, and that's what the district court found in its opinion, that they were beneficiaries of the trust that basically controls Cadillac Jacks. Okay, and so the district court's conclusion on that, how does that fit into your understanding of the law here? Well, what the district court didn't do, and so let me, turn to, in terms of this circuit's precedent, obviously the LGAA bars damages against local officials who are acting in an official capacity. And when you parse through the language and the opinions, basically official capacity is if you're acting within your job description. But what this circuit did in the San Chris case was look to the legislative history of the LGAA and they both concluded that the intent of Congress was to limit the immunity to lawful actions. So on the one hand you have a situation where nobody would argue that if you're in the town government certainly you have a right to recommend and enact ordinances. But in this case, because of the factual circumstances of this case, all three of them were expressly prohibited by statute from recommending or voting on those ordinances and that's where they ran afoul. And the district court even said in its opinion that it's apparent that some of these defendants in front of me engaged in some misconduct and then having said that he simply swept it under the rug and didn't account for that in terms of them violating something that there's a statute that they're specifically prevented from voting. So counsel, just as a practical matter, what was supposed to happen before the district court? I Colorado State Court that there had been a violation of the statute. Was this supposed to be sort of a mini trial before the district court on the question of whether there was an ethical violation that then prevented them from voting? Well in this context this was summary judgment and so the question is what is the evidence here? It's not who said what, it's what's the interest. I mean they're family members, they're immediate family members, they're beneficiaries of the trust and the statute is clear on its face that they're not supposed to vote. What do you do with the burden of proof in the statute? What do you do about the burden of proof in the statute that it requires proof beyond a who is essentially prosecuting an ethical violation? That's not what we're doing here. We're not prosecuting that. We're not pursuing an ethical violation. We're using it to say that they don't have an immunity defense under the LGAA. That's a different thing. That's a typical preponderance of evidence in a civil matter. And the the LGAA immunity defense, whose burden is in this case, that's a good question. On Norr Pennington it's clear that the the burden is on whoever's claiming Norr Pennington immunity. I would say as a claimant under the LGAA. Is it an affirmative defense? Is it an affirmative defense? Well yes, yes. I mean yes it is and then when we dispute that affirmative defense by saying that you acted unlawfully, then it's our burden to prove that they acted unlawfully. But we still have to circle back to whether or not they were acting within their authority and our case law tells us we are to read that broadly. As I've said, normally they would be acting within their authority except in this case they're specifically prohibited by statute from doing that. And significantly both in the in in the GF Gaming case and in the San Chris case, the opinions both noted that there was no prohibition on doing what the claimants for immunity did. So they were found to have acted lawfully and within their official capacity because there was no statutory violation in GF Gaming and there was no by-laws prohibition in the San Chris case. So the distinction that you're making is in GF Gaming we observed that the plaintiffs didn't allege that the city officials lacked the authority and here you're just you're saying the exact opposite. Yes I would I were saying that they would normally have the authority except for this specific statutory prohibition that applies in this one particular circumstance. So could you be specific when we're saying you're saying they who exactly would be immune under the LGAA here? Would it be which individuals are we talking about? Well the three we're talking about are Cameron Tyler and Brent Chaucey. Cameron and Tyler were on the on the board and Brent was on the planning and development committee. But Brent didn't vote. Well he he voted in terms of the planning and development committee to recommend this to the board. So yes he voted in that sense. Is that a is that something that we just accept as as true? I mean is that something that needs to to be understood in terms of what the ethical statute requires? First of all in terms of whether it's true or not there's nothing in the minutes that itemizes from the planning and development committee who voted which way. He was on the committee. He was there. They recommended and I think I think it's a logical assumption because there's no recommend or there's no record that he objected in any way shape or form. I think the other thing I should address because time is growing short is the Norr-Pennington doctrine which obviously immunizes petitioning government even to obtain anti-competitive ends. The problem here is that the defendants over and over and over categorically denied ever doing it and it's their burden to establish their entitlement and you can't establish your entitlement to it by denying that you tried to influence the government. Did you make that argument before the district court? Oh yes your honor. Yes we did. Yes we did. They they claim we didn't but yes we did. And it wasn't an alternative defense? What how do you respond to that? You can plead alternative defenses but when it comes to summary judgment you've got to have some evidence to back up your entitlement to your claim of immunity. You can't you can't just say it and and sit back and do nothing and that and what happened here not only did they not do nothing they categorically denied doing anything and so the the choice is own up to what you did and say it in all the Norr-Pennington cases that everybody admits they petitioned government in one way or another and in uh in this situation they they deny it and the district court then made up a bunch of hypothetical assumed facts and uh as sort of straw men and then. Well I thought your argument was that um and the court considered the argument that they were acting in a commercial capacity rather than a political capacity. Well yes yes. But now you seem to be saying the reverse. Well no I'm saying to qualify for the immunity you have to be acting in a in a political capacity. What they did in our view there's all kinds of circumstantial evidence they did everything behind the scenes. There's nothing in any of the minutes of any of anybody going in there to these uh board meetings and arguing uh against the uh or yeah arguing arguing for rather these ordinances. If it was done it was done behind the scenes and there's all kinds of circumstantial evidence including Calvin Chaucey telling an RV tenant of Van Zandt's gee I hope the board passes a uh a ordinance that will restrict RVs exclusively to RV parks. Well if he said that to somebody basically on the other side what are the chances he didn't say that to his three family members who are in the town government. So with that unless you have any more questions for me I need to leave some time for my co-counsel. Thank you your honors. Good morning my name is Ben Wick. I'm here to discuss the constitutional issues that arose here. I think um you know the facts here are very relevant to that and I think the context there is important because in 2015 when our client decided to start renting to RV spaces uh Cadillac Axe was the largest um RV park in town and it was owned by the Chauceys whose grandkids were uh the mayor and a board member uh voting on various ordinances that affected those RV parks. And they began passing ordinances uh in 2016 so not long after requiring my client now to uh evict manufactured home tenants, get rid of all the manufactured homes on his property. So you're basing your constitutional violation on a property interest? That's correct. Define that property interest. Yes so there is a legitimate interest in uh being able to use and enjoy the property uh as it saw fit. There was no zoning here uh and there was no... So they could rent sewer on the ground and hook up to water wherever they wanted to? Well they had to comply with with you know regular building codes but they had done that. There was no it's not like you know that that might exist from the the county or uh they didn't have that. That's not the argument here. The argument is that this was a legitimate um you know claim. Our argument is that that they could do operate any lawful purpose uh including an RV park and it's it's different from the Eason and Jordan Arapaho cases uh and the recent Brown case where there were zoning schemes and the court said um to have a uh protected interest. So you're saying that that your client had an inherent right to rent this property as he saw fit? I'm saying whether mobile homes or RV parks. Well yes under the scheme in place which wasn't one. There was no discretion by CalHan which is the important uh key to stop them from doing so and their attorney confirmed that explicitly uh you know an email said there's absolutely no zoning organization or uh regulations and that the um town has no ability to stop. Were there any rulings by the town through any organization that would create a right in your client's property interest? I see my time is up. Go ahead please. Um I there were no rulings that created uh you know a right to an RV park but I think the key here is that there was none that prevented him from doing so and that and because there was no zoning uh scheme they didn't have any discretion like in those other cases to prevent him from doing so which is really the key uh you know there. Thank you. Good morning your honors may it please the court. My name is Marnie Nathan Closter and it's my honor to represent the town of CalHan and Brent Cameron and Tyler Shosey and also at council table is Mr. New. She represents the other defendants who will be prepared at the end of this argument to answer any Noor Pennington questions you have as it relates to his clients. In reviewing this matter I respectfully request the court focus on four issues or factors. First what Van Sant actually argued in summary judgment and then preserved through argument in its opening brief. Anything not raised in those two matters and raised for the first time on in its reply brief either as a claim or an argument should not be properly before this court under long established precedent. Second the plain language of both the LGAA act as well as the plain language of the state statute relied upon by Van Sant as that is what should guide an analysis of what those provisions. Counsel I know you have four points but on that one what are we to do with the gaming case where it seems to be uh read alongside the statute to be adding some sort of a requirement? And your honor I think you have to read that full paragraph in the gaming case in context and when you read it in context the word lawful comes up in the context of official actions and defining what they're talking about. So the paragraph starts with plaintiffs don't allege that the city's lacked authority and it ends with our position that an affirmative grant of explicit authority is not required for an employee or government official to be acting in an official capacity is consistent with the position taken by the second circuit. I think when you start with the plain language of the act which talks about official action and its goal which is expressed in case law as well as legislative intent and legislative history that this is to be broadly applied. The point is do they have the ability in their regular course of duties to do this? So would you say if the record here clearly established a violation of the Colorado ethics statute would Cameron, Tyler, Brent have been able to lawfully vote on the But it's a question that I think is really important to understand just sort of the practical dynamics of this case. So in my mind your honor that is not what LGAA immunity is intended to address. It is intended to address federal antitrust claims. It is intended to provide broad immunity for everything that falls within the scope of a duty to be performed by an individual and that is what we have here. Even though it's completely unethical? You know there are you know antitrust and other sorts of ethics and other governing statutes throughout all of the states and if LGAA immunity was to have an exception for any of those state statutes even for conduct that any of us might find inappropriate or unfavorable or unsavory then the act would have said that. The legislative history would have discussed that but it is supposed to be broad wielding. Well that's so broad that they could just go out and set their mind to do everything raw and they'd be protected under your position. Under the immunity from damages for a federal antitrust claim yes but not under other state cases and claims. There could have been a declaratory relief claim brought in this case to declare the ordinance invalid right? That would have been the appropriate way to handle a claim that the ordinance should not have passed the way it passed but that is not what was brought. There is a DA procedure under the state ethics statute to address any purported wrongdoing. That did not occur here. There was no action taken by the DA so I would respectfully say there are other remedies that that is to be addressed in different forms of claims but that's not the claim here and the claim here is supposed to have broad wielding immunity. Well the claim here is that they were set up that the town attorney said no there's no ordinances do whatever you want and then lo and behold they came in and adopted these various ordinances that just cut the feet right out from underneath these people. And I think that if you look at the if you look at the full email from Mr. Parker and you actually read everything and not just the one sentence cited by opposing counsel in briefing and you read the full email it talks about there are a variety of other code provisions right water and sewer are addressed in other code provisions because that is a clear health safety and welfare issue. There are other provisions you have to apply and comply with. You may not have to go through some sort of specific zoning classification process to convert to an RV park but you still have to comply with these other regulations and be forewarned that there is on the horizon the potential for direct regulations governing RV parks. So keep your client apprised and pay attention and within a month or so right exactly what the town attorney alluded to was in the process came forward and in during that time frame and for months prior and six months after the Van Sant property did not do anything that was RV park specific and it's no different than the existing RV parks. If they choose to RVs require different water and sewer hookups. Their property was not in compliant as noted in the record by the numerous code violations of things like water and sewer. So they were going to have to engage in work that would have taken them out of any grandfathering provision even if they were covered under it because they were expanding and changing the property in a material way. Counsel can you go back to my question? I'm still struggling with how would we write this in favor of your client on the LGA claim and specifically how would we write it so that we would account for our precedent on interpreting the statute to require lawful action? I think you start with the plain language of the statute. It is clear that it's official action. There is no exception for legality or lawful. In the statute so you start with the plain language of the statute. You then move to the legislative intent which is that it be broad in covering. You consider that there are other separate state law remedies for conduct that you may dislike or you may not find to have been appropriate. And so we ignore this case that we have the gaming case? No I think when you look at the gaming case it is talking about the scope of whether the conduct falls within duties. In that case there was pretty distasteful conduct. Apparently the grand jury found malfeasance or misfeasance and still immunity applied. The same thing with Thatcher by the way. You know in Thatcher the allegations were they had no jurisdiction to take the action they took and that they violated their own oath of office statute by not complying with those procedures. They too still got immunity despite those allegations because the focus is does this fall within the type of conduct that the individuals at issue would be performing. So does lawful mean permissible? I think it means within the scope of their conduct yes not an illegal versus you know criminal conduct allegation. It is does it fall within the type of regularly conducted activity of which even opposing counsel has acknowledged the enactment of this sort of ordinance does fall within that type of conduct that would regularly be occurring by board members. So if your friends on the other side had come into summary judgment with a judgment Colorado judgment against your clients finding that they were in violation of the Colorado ethics code you would contend in the summary judgment proceeding in this case that they're still entitled to LGAA? Yes I would your honor and I would say that there are other remedies and that finding that they had would entitle those remedies or they could have pursued a declaratory judgment to say that you acted without the appropriate procedures. They have other remedies but we're talking about this narrow but important issue of LGAA immunity and in the little time I have left I'd just like to point out that when you focus on what was actually briefed injunctive relief was never briefed in summary judgment or the opening brief. That claim and argument sailed when it was not preserved. Additionally I would note as your honors were talking about there's no protected property interest that has been implicated here for due process. They simply had the right like anyone else to move forward and operate under appropriate regulations. That does not under any of the case law entitle them to ownership without unfettered restriction. Would certainly rely solely like the district court did on the rational basis review and the fact that for both the equal protection and due process claims rational basis is all that's required and these sorts of ordinance requirements are adopted across the state as noted in the expert report and summary judgment briefing and the state itself through the Colorado Department of Public Health has the same exact requirements. If that does not show health safety and welfare interest I'm not sure what would. So I think you do not have to address the property interest you can simply dispose of both 1983 claims under rational basis review. We've talked about you know considering only what's properly preserved and before you that under the state ethics and the LGEA the plain language governs the legislative intent of the LGAA is important to keep in mind as well as what the intent of the state statute is right which is to provide a DA procedure. There is nothing in the statute that talks about voiding any action as a result of such misconduct. It instead provides for certain money to be brought in through the DA and a process and we've talked about the rational basis component very briefly and the fact that this is a legitimate ordinance with health safety and welfare purposes and it's incumbent upon opposing counsel to negate under the case law every rational basis legitimate purpose and it's incumbent upon the court to make certain you have addressed whether it's. He argues that you come up with this health safety etc rationale after the fact. This was just something that was dreamed up to justify your health safety and welfare preventing sewers from opening on the property preventing illegal water access and there's no case law and in fact the case law I have read has indicated and that we cited in our brief it doesn't have to use the words health safety and welfare. How does your motivation the town's motivation even factor into our rational basis analysis? The case law is clear motivation is irrelevant. You are to look at the objective factors of the provision and the determined right for enforcing them themselves is that these sorts of ordinances water sewer and the like are health safety and welfare. With that your honor we would respectfully request that you continue to uphold the summary judgment decision on the issues that are pending before you and I'll give the last couple of minutes to my co-counsel. Good morning. Eric Neusch on behalf of the non-governmental defendants because my time is short I'll cut to the chase. The district court properly applied the Norr-Pennington doctrine which clearly immunizes the allegations in this case. He applied the correct standard for summary judgment. He accepted the allegations that my clients were in a conspiracy with the town officials. There was nothing wrong with him doing that and based on those allegations which they they get the benefit of they rise and fall on those allegations. That conduct is clearly within the Norr-Pennington doctrine. The Norr-Pennington doctrine is a robust doctrine that exempts any type of conduct in the political process by private parties. So what kind of actions could local officials take that would undermine Norr-Pennington immunity? Well according to the Supreme Court in the Omni decision in 1991 almost no actions. They asked in Omni the Supreme Court said we are not going to carve out a conspiracy exception. The litigants in that case said well how about you carve out a bribery exception or something illegal under state or federal law. They said we're not going to do that. This court in the Cole v. First American title case in 2011 expanded on that and said bribery of a insurance superintendent is immunized. So to get to the point of my colleagues on the other side they're saying well it it has to be out in the open. They have to admit to a conspiracy. That is not consistent with either Omni or this court in in Cole v. First American because you don't have to admit to bribery. You don't have to admit to a conspiracy to avail yourself to the immunity doctrine. There's just no authority for that. In fact it's plainly inconsistent with Omni and this court in Cole v. First American. Thank you counsel. Thank you. Is there any time left? No. Okay. Thank you very much for your helpful arguments. The case is submitted.